UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| ANDY REEVES, ) | Civil Action No.: 4:12-cv-3524-JFA-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | |
| ) | **REPORT AND RECOMMENDATION** |
| ) | |
| CAROLYN W. COLVIN[1], ) | |
| Acting Commissioner of Social Security; ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

      This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits (DIB). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied.

**PROCEDURAL HISTORY**

      Plaintiff filed an application for DIB on August 5, 2009, alleging a disability onset date of July 1, 2008. His applications were denied at all administrative levels and upon reconsideration. Plaintiff filed a request for a hearing. An administrative law judge (ALJ) held a hearing on June 24, 2011, and subsequently issued an unfavorable decision on October 18, 2011. The Appeals Council denied Plaintiff's request for review on October 15, 2012, making the ALJ's decision the

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Commissioner's final decision. Plaintiff sought judicial review in this court by the filing of a complaint on December 14, 2012.

## PLAINTIFF'S ARGUMENTS

   I.   Opinion Evidence. The opinions of the examining physician, Dr. Tollison, support restrictions which the ALJ improperly dismissed.

   II.  Treating physicians' opinions are entitled to great weight in the absence of compelling contrary evidence and may be entitled to controlling weight. The ALJ improperly gave little weight to a substantial number of treating and examining medical opinions which supported a finding of disability.

   III. Listing of Impairments. The ALJ erred in determining that Reeves' impairments did not meet or equal a Listing of Impairments in Subpart P of Regulations No. 4.

   IV.  Reeves' testimony was not based on leading or suggestive questioning.

   V.   Failure to obtain treatment. Social Security regulations do not allow the ALJ to discount disability because of a failure to obtain treatment without further investigation.

Pl. Brief.

## FACTUAL BACKGROUND

Plaintiff was born on March 30, 1964, and was 44 years of age on the alleged onset date. Plaintiff has a ninth grade education and past relevant work as a dye machine operator and a warehouse worker, which included work as a forklift driver.

## DISABILITY ANALYSIS

In the decision of June 16, 2011, the ALJ made the following findings of fact and conclusions of law:

   1.   The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2. The claimant has not engaged in substantial gainful activity since July 1, 2008, the alleged onset date (20 CFR 404.1571 et seq.).

3. The claimant has the following severe combination of impairments: degenerative disc disease, an affective disorder, an anxiety disorder, and a somatiform disorder (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) (lift/carry 20 pounds occasionally, 10 pounds frequently, sit, stand and walk about 6 out of 8 hours a day) except he should never climb ladders, ropes, and scaffolds, only occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl and frequently balance. He should avoid even moderate exposure to hazards such as machinery and heights. He can concentrate, persist, and work at pace to do simple, routine, repetitive tasks at level three commonsense reasoning per the DOT for extended periods of two hours at a time for an 8-hour workday, interact occasionally with the public, and interact appropriately with co-workers and supervisors, in a stable, routine setting.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on March 30, 1964, and was 44 years old, which is defined as a younger individual age 18-49, on the alleged disability date (20 CFR 404.1563).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a)).

> 11. The claimant has not been under a disability, as defined in the Social Security Act, from July 1, 2008, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 24-36).

Under the Social Security Act (the Act), 42 U.S.C. § 405 (g), this court's scope of review of the Commissioner's final decision is limited to determining: (1) whether the decision of the Commissioner is supported by substantial evidence, and (2) whether the legal conclusions of the Commissioner are correct under controlling law. Myers v. Califano, 611 F.2d 980, 982-83 (4th Cir. 1988); Richardson v. Califano, 574 F.2d 802 (4th Cir. 1978). "Substantial evidence" is that evidence which a "reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 390. Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The Court's scope of review is specific and narrow. It does not conduct a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405 (g) (1982); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established. Five questions are to be asked sequentially during the course of a disability determination. 20 C.F.R. §§ 404.1520, 1520a. An ALJ must consider: (1) whether the claimant is engaged in substantial gainful activity, (2) whether the claimant has a severe impairment, (3) whether the claimant has an impairment which equals a condition contained within the Social Security Administration's official listing of impairments (at 20 C.F.R. Pt. 404, Subpart P, App. 1), (4) whether the claimant has an impairment which prevents past relevant work, and (5) whether the claimant's impairments prevent

him from any substantial gainful employment.

Under 42 U.S.C. §§ 423 (d)(1)(A) and 423(d)(5), pursuant to the Regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1503(a); Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported by substantial evidence and if proper legal standards were applied. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

A claimant is not disabled within the meaning of the Act if he can return to his past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82-62. The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423 (d)(5). He must make a prima facie showing of disability by showing he was unable to return to his past relevant work. Grant v. Schweiker, 699 F. 2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the national economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy that the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by

obtaining testimony from a vocational expert. Id. at 191.

## ARGUMENTS/ANALYSIS

**Medical Opinion Evidence**

In his opinion, the ALJ weighed the opinions of non-examining State agency physicians Drs. Meriwether and Van Slooten; treating physician Dr. DeGarmo; examining psychologist Dr. Tollison; vocational consultant Dr. Benson Hecker; and non-examining State agency psychologist Dr. Horn (Tr. 33-35). He assigned the greatest weight to the opinions of the State agency medical consultants, while discounting the opinions of Drs. DeGarmo, Tollison, and Hecker (Tr. 33-35). Plaintiff argues that remand is necessary because the ALJ did not provide sufficient reasons for the weight he assigned to the medical opinion evidence.

The Social Security Administration's regulations provide that "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(d). Generally, more weight is given to the opinions of examining physicians than non-examining physicians. More weight is given to the opinions of treating physicians since they are more likely to be able to provide a detailed, longitudinal picture of a claimant's medical impairment. See 20 C.F.R. §§ 404.1508 and § 404.1527(d)(2). The medical opinion of a treating physician is entitled to controlling weight, i.e. it must be adopted by the ALJ, if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. § 404.1527(d)(2), SSR 96-2p, and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a

treating physician in the face of persuasive contrary evidence." Mastro, 270 F.3d at 178 (citing Hunter v. Sullivan, 993 F.2 31, 35 (4th Cir. 1992)).

In determining what weight to give the opinions of medical sources, the ALJ must apply all of the factors in 20 C.F.R. § 404.1527(c)(1)-(6), which are: whether the source examined the claimant; whether the source has a treatment relationship with the claimant and, if so, the length of the relationship and the frequency of examination; the nature and extent of the treatment relationship; the supportability and consistency of the source's opinion with respect to all of the evidence of record; whether the source is a specialist; and, other relevant factors. See SSR 96-2p; Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006).

First, Plaintiff challenges the weight given to the opinion of examining psychologist Dr. C. David Tollison. On June 30, 2010, Dr. Tollison performed a diagnostic evaluation of Plaintiff at his attorney's request and prepared a "Pain Patient Profile Interpretive Report." (Tr. 283-299). Plaintiff reported chronic lower back pain since an October 2005 injury which was then exacerbated by a work injury on May 18, 2008. Plaintiff also reported neck pain and pain down his left leg. Plaintiff reported that his pain causes problems with walking, sitting, and sleeping. Plaintiff indicated that his depression began in 2006 or 2007 and had worsened with his pain intensity and lifestyle changes. Dr. Tollison indicated that Plaintiff talked "of generalized sadness and describes dysphoric mood." Plaintiff had feelings of loss and mourned his job, lifestyle prior to pain, and family deaths. Plaintiff had a loss of feelings of self-esteem and self-confidence tied to his inability to work. Plaintiff reported crying spells, low energy, tiring easily, and problems keeping his attention and focus. On mental status examination, Plaintiff was cooperative and appeared to expend good effort. Plaintiff exhibited a mild intensity of psychomotor retardation with a mild slowing of both overt and covert

behaviors. His cognitive processing was "just a beat off and slow but basically intact and logical." He was appropriately oriented. Plaintiff's thought content was highly somatic and he admitted that when he is stressed and psychologically distressed, his pain intensity is increased. Plaintiff's affect was blunted and his mood was dysphoric. Dr. Tollison estimated Plaintiff to fall within the lower-average to average range of intelligence. Plaintiff's Pain Patient Profile (P-3) psychological test was considered valid and showed a somatization score in the top 12th percentile, a depression intensity score in the top 16th percentile, and an intensity of anxiety score in the top 22nd percentile. Dr. Tollison indicated that testing showed that it was likely that Plaintiff's depression was chronic and longstanding and might have been exacerbated by the duration of his pain and impact of his pain on his functional abilities. Plaintiff presented as constricted and immobilized by multiple physical symptoms and his pain likely occupied much of his thought and attention. Short-term memory problems were likely. Dr. Tollison noted that Plaintiff may struggle in attempts to relax and likely avoids social contact as well as stressful and demanding situations. MMPI-II results were statistically valid with no suggestion of manipulation or symptom promotion. Test results confirmed elevations in anxiety, heightened over-reactivity, clinical depression, and strong somatic concentration. Dr. Tollison indicated that pain, suffering, and functional limitation likely occupy much of Plaintiff's thought and attention with stress-coping skills and adaptive behaviors appearing largely ineffective. Plaintiff may feel dissatisfied, frustrated, worried, ruminative, tense, and struggle with cognitive internal turmoil. (Tr. 296-297). Dr. Tollison's impressions were major depressive disorder, recurrent; somatoform disorder (pain disorder associated with both psychological factors

and a general medical condition); chronic pain syndrome; and a GAF 50.[2] (Tr. 297). Dr. Tollison stated that Plaintiff pain and depression were both "longstanding." Dr. Tollison indicated that Plaintiff "exhibits symptoms of primary depression with anxiety features. His depression and pain appear associated." Dr. Tollison explained that P-3 psychological testing and MMPI psychological testing both were "statistically valid and suggest the probability of psychological influence in his perception of pain, suffering, and functional limitation." Based on his evaluation, review of medical records, and psychological test results, Dr. Tollison opined that Plaintiff suffered "a frequent (34-66%) psychological impairment in social functioning, frequent (34-66%) impairment in activities of daily living, frequent (34-66%) impairment in concentration/persistence/pace, and a constant (greater than 66%) impairment in adaptation to stressful conditions." (Tr. 297). Dr. Tollison stated that work pressures, stresses, and demand situations would be expected to result in "deterioration both in psychological functioning as well as perception of pain." Dr. Tollison noted that Plaintiff complained of increased pain with activity and is "expected to require frequent and unscheduled rest periods." Dr. Tollison stated that results of psychological testing indicate that Plaintiff "distracts easily from task based on his co-morbid symptoms. Consequently, his ability to maintain concentration and attention over time is impaired." Dr. Tollison also stated that Plaintiff's condition is chronic and expected to continue over the next twelve or more months." Dr. Tollison indicated that Plaintiff would be capable of managing funds if he were awarded benefits. (Tr. 283-299).

---

[2]A GAF score of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 34 (4th ed. text revision 2000).

>In the hearing decision, the ALJ addressed Dr. Tollison's report as follows:

>On June 30, 2010, the claimant underwent a one-time psychological evaluation by David Tollison, Ph.D. The claimant was diagnosed with a major depressive disorder, recurrent, and a somatoform disorder (pain disorder associated with both psychological factors and a general medical condition). His Global Assessment of Functioning score was estimated at 50 indicating some serious limitations in occupational functioning, activities of daily living, and in concentration, persistence, and pace with a constant impairment in adaptation to stressful conditions. Dr. Tollison expected the claimant to require frequent and unscheduled rest periods due to his complaints of pain. . . .

>The mental limitations as set forth by Dr. Tollison are not given great weight as Dr. Tollison only evaluated the claimant on one occasion, and his limitations are not entirely consistent with other opinion evidence.

(Tr. 34, 35).

Plaintiff first argues that Dr. Tollison's opinions should not be discounted because he only evaluated Plaintiff one time, especially since the ALJ assigned the greatest weight to the opinions of the non-examining state agency examiner. (Tr. 35). Indeed, as discussed above, frequency of examination is only one issue to be considered by the ALJ in determining what weight to give to a medical opinion. 20 C.F.R. § 404.1527(c).

Plaintiff also argues that the ALJ's conclusory statement that Dr. Tollison's opinions are "not entirely consistent" with other opinion evidence is insufficient to support his decision and inaccurate. The ALJ does not specifically address with whose opinions Dr. Tollison's opinions are inconsistent. Dr. Ronald DeGarmo, Plaintiff's treating physician, completed a medical questionnaire on July 20, 2010, at the Commissioner's request, indicating that he had treated Plaintiff for anxiety and depression and had prescribed Restoril and Prozac for these conditions, which had helped. Dr. DeGarmo indicated that he had not recommended psychiatric care. Dr. DeGarmo indicated that Plaintiff was appropriately oriented; had a slowed and distractible thought process; had a suspicious,

obsessive, and paranoid thought content; had a worried, anxious, flat, depressed, and withdrawn mood and affect; and, had an adequate attention, concentration, and memory. Dr. DeGarmo stated that Plaintiff's work-related limitation in function due to his mental conditions was "serious." Dr. DeGarmo also indicated that Plaintiff would be capable of managing his own funds. (Tr. 300).

On May 20, 2011, Dr. DeGarmo completed several evaluations regarding Plaintiff, including a Mental Medical Assessment form. In making occupational adjustments, Dr. DeGarmo indicated that Plaintiff had a "fair" ability to deal with the public, to deal with work stresses, to function independently, and to maintain attention and concentration. The assessment form characterized "fair" as "[a]bility to function in this area is seriously limited and unsatisfactory." Plaintiff's other abilities in making occupational adjustments were marked "good" which means that the "[a]bility to function in this area is limited but satisfactory." Dr. DeGarmo explained, "[Plaintiff] has chronic pain and suffers from anxiety and depression associated with pain." In making performance adjustments Dr. DeGarmo indicated that Plaintiff's abilities to understand, remember, and carry out complex job instructions and detailed, but not complex, job instructions, was "fair" and his ability to understand, remember, and carry out simple job instructions was "good." These limitations were based on Plaintiff's "chronic pain associated with anxiety and depression." In making personal and social adjustments, Dr. DeGarmo indicated that Plaintiff's abilities to maintain personal appearance and to demonstrate reliability were "fair" and Plaintiff's abilities to behave in an emotionally stable manner and to relate predictably in social situations were "good." (Tr. 335-336).

The ALJ found that "[a] review of Dr. DeGarmo's treating notes as well as evidence from other examiners fails to establish the presence of psychosis or obsessive and paranoid behaviors, and treating notes do not reflect serious limitations due to a mental impairment. Dr. DeGarmo's report

regarding the presence of such issues is not found fully credible." (Tr. 30). He further stated, "I find the 'serious' and 'fair' mental limitations and abilities set forth by Dr. DeGarmo unsupported by his treating notes and other evidence of record. I note Dr. DeGarmo's sympathies toward his patient." (Tr. 35).

Dr. DeGarmo's treatment notes are replete with Plaintiff's complaints of lower back pain. In addition, his treatment notes reveal that Plaintiff first complained to him of anxiety, among other things, in September of 2006. Dr. DeGarmo started Plaintiff on Cymbalta at that time. (Tr. 257). In April of 2009, Dr. DeGarmo again evaluated Plaintiff for anxiety and depression. (Tr. 275). In December of 2009, Dr. DeGarmo evaluated Plaintiff to discuss medication for Plaintiff's "nerves." (Tr. 279). Dr. DeGarmo again evaluated Plaintiff for anxiety in March of 2010. (Tr. 280). On June 23, 2010, Plaintiff reported to Dr. DeGarmo that he still had anxiety with sweaty palms, and felt like a "roller coaster." (Tr. 282). Subsequently, on June 30, 2010, Dr. Tollison performed his diagnostic evaluation of Plaintiff, discussed above. (Tr. 283).

The ALJ gave the "greatest weight" to the state agency program psychologist. With respect to that psychologist, who is unnamed[3] in the ALJ's decision, the ALJ notes,

> In regards to the claimant's mental impairments, a State Agency psychologist diagnosed the claimant with an affective disorder and anxiety-related disorder and under the "B" criteria assessed mild limitations in activities of daily living, and moderate limitations in social functioning, concentration, persistence, or pace with no episodes of decompensation. In a mental residual functional capacity assessment, the claimant was found able to understand, remember, and carry out detailed instructions, ask questions or request assistance from peers or supervisors while avoiding on-going interactions with the public; respond to changes in a routine work setting; be aware of safety and work hazards; and travel to and from work using available transportation.

---

[3]The medical records reveal the state psychologist as Dr. Craig Horn. (Tr. 311).

(Tr. 34). Dr. Horn's Psychiatric Review Technique and Mental Residual Functional Capacity forms were completed on August 14, 2010. (Tr. 311, 327). Dr. Horn did not have the benefit of reviewing Dr. DeGarmo's Mental Medical Assessment form, which was completed after Dr. Horn's review.

The ALJ gave the greatest weight to the opinion of the non-treating, non-evaluating state agency psychologist, while discounting the opinions of Plaintiff's treating physician and the consulting psychologist. Although the ALJ found that the opinion of Dr. Tollison is inconsistent with the other opinion evidence in the record, the ALJ does not clearly identify the other evidence with which it is inconsistent. It appears that it may be inconsistent with the opinion of Dr. Horn, which appears to be inconsistent with the other evidence in the record. "A non-examining physician's opinion cannot, by itself, serve as substantial evidence supporting a denial of disability benefits when it is contradicted by all of the other evidence in the record." Martin v. Secretary of Health, Education and Welfare, 492 F.2d 905, 908 (4th Cir.1974). Furthermore, as stated above, the medical opinion of a treating physician is entitled to controlling weight, i.e. it must be adopted by the ALJ, if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. § 404.1527(d)(2), SSR 96-2p, and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).

In sum, the ALJ did not conduct a proper analysis of the treating and consulting physicians' opinions. Accordingly, the undersigned recommends that reversal and remand are necessary to allow the fact finder to evaluate the opinions of the physicians under the regulatory standards set forth in § 404.1527(c). To the extent that deference is not provided to the opinions of the treating physicians, the ALJ must evaluate the opinions under the § 1527(c) standards and articulate good reasons for rejecting the treating and consulting physicians' opinions. Proper application of the treating physician

rule may have a significant impact on the Commissioner's determination of severe impairments, credibility and the RFC and on the availability of work to Plaintiff in the national economy at Step Five.[4]

## **CONCLUSION**

In conclusion, it may well be that substantial evidence exists to support the Commissioner's decision in the instant case. The court cannot, however, conduct a proper review based on the record presented. Pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631 (c) (3) of the Social Security Act, 42 U.S.C. Sections 405 (g) and 1338 (c) (3), it is recommended that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be REMANDED to the Commissioner for further administrative action as set forth above.

 s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

January 27, 2014
Florence, South Carolina

---

[4] In light of the recommendation that this matter be remanded for further consideration, the court need not address any remaining issues, as they may be rendered moot on remand.